Timothy A. Gambacorta
AZ Bar No. 028460
IL Bar No. 6279115

The Gambacorta Law Office, Inc.
5250 Old Orchard Road, Suite 300
Skokie, Illinois 60077
Tel: 847-786-2599
Fax: 847-786-2612
Email: tim@gambacortalaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON, TEXAS

| | |
|---|---|
| **LAN THI PHAN**, | A-File No. 073-268-924 |
| Plaintiff, | |
| vs. | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; KRISTI NOEM**, Secretary of Homeland Security; **ANGELICA ALFONSO-ROYALS**, Acting Director, U.S. Citizenship and Immigration Services; **CAROLYN KEMOKAI**, Field Office Director, Houston Field Office, U.S. Citizenship and Immigration Services, | Case No.: 4:25-cv-03243

Agency No.: IOE0921070882 (N-336)
Agency No.: IOE0912078805 (N-400) |
| in their official capacities, | **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT** |
| Defendants. | |

## INTRODUCTION

1.      Plaintiff, LAN THI PHAN ("Plaintiff"), through Counsel, brings this civil action under the Administrative Procedure Act, 5 U.S.C. §701 et seq., and the Immigration and Nationality Act, 8 U.S.C. §1101 et seq., seeking declaratory and

injunctive relief in connection with the denial of her N-400, Application for Naturalization.

2.      Plaintiff is a lawful permanent resident of the United States with a medically documented neurocognitive impairment. Pursuant to 8 U.S.C. §1423(b)(1), individuals with "physical or developmental disabilities or mental impairments" may be exempt from the English and Civics testing requirements for naturalization through the submission of Form N-648, Medical Certification for Disability Exceptions (hereinafter, "N-648" or "N-648 disability exception request").

3.      Despite multiple properly submitted N-648 disability exception requests and USCIS's eventual approval of at least one such request, Plaintiff's application was denied on the basis that she allegedly provided false testimony to obtain an immigration benefit. She challenges this finding as inconsistent with USCIS policy, unsupported by the record, and contrary to law.

4.      Plaintiff seeks declaratory relief to vacate the false testimony finding, injunctive relief to allow completion of the naturalization process without English and Civics testing, and attorneys' fees pursuant to applicable law.

## PARTIES

5.      Plaintiff Lan Thi Phan is a foreign national of Vietnam who resides in Spring, Texas and has been a lawful permanent resident since April 15, 1993.

6.      Defendant U.S. Department of Homeland Security ("DHS") is the cabinet department that oversees the United States' immigration and naturalization process. DHS is responsible for the implementation of the Immigration and

Nationality Act, and for ensuring compliance with applicable federal law, including the Administrative Procedure Act.

7.    Defendant U.S. Citizenship and Immigration Services (hereinafter sometimes referred to as "USCIS") is the component of DHS that is responsible for administering the naturalization and immigration system of the United States.

8.    Defendant, Kristi Noem ("Noem"), the Secretary of DHS, is the highest-ranking official within DHS. Noem is responsible for DHS and all its subdivisions' compliance with law. Noem is sued in an official capacity as an agent of the government of the United States.

9.    Defendant Angelica Alfonso-Royals ("Alfonso-Royals"), Acting Director of the U.S. Citizenship and Immigration Services, is at the highest-ranking office within USCIS. Alfonso-Royals is responsible for the implementation of the Immigration and Nationality Act and for ensuring compliance with all applicable federal laws, including the Administrative Procedure Act. Alfonso-Royals is sued in an official capacity as an agent of the government of the United States.

10.    Defendant Carolyn Kemokai ("Kemokai") is the Director of the USCIS Houston Field Office and is sued only in an official capacity, as well as any successors and assigns. The Houston Field Office is located at 810 Gears Rd., Suite 100 in Houston, Texas 77067.

## JURISDICTION AND VENUE

11.    Under INA §310(c), 8 U.S.C. §1421(c), 28 U.S.C. §§1331 [federal question statute], and the Administrative Procedure Act 5 U.S.C. §701, *et. seq.*, the

Court has jurisdiction over this case as Plaintiff's Application for Naturalization has been denied after a hearing before an immigration officer under 8 U.S.C. §1447(a).

12.     Venue is proper in this District under 28 U.S.C. §1391(e), in that this is an action brought against officers and agencies of the United States in their official capacities, brought in the District where a Defendant resides and where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred. More specifically, adjudicators **within the Houston Field** Office of USCIS denied Plaintiff's N-400, Application for Naturalization.

## STANDARD OF REVIEW

13.     INA §310(c) and 8 U.S.C. §1421(c) mandate that review of Plaintiff's naturalization application be conducted *de novo* and that the Court make its own findings of fact and conclusions of law. In accordance, Plaintiff requests that the Court conduct a hearing *de novo* on the application for naturalization.

## THE CHALLENGED PRACTICES

14.     The Defendants, with respect to applicants for naturalization in the **Houston** District, maintain a practice and procedure for evaluating N-648 disability waivers that violate every tenet of the comprehensive statutory and regulatory scheme.

15.     These practices often derive from USCIS's officers' general skepticism of the nature of an applicant's disability, despite the fact that the USCIS policy manual instructs interviewing officers to "generally accept" the medical professional's diagnosis.

16.     With this approach, and over the course of two naturalization interviews, an N-336 hearing, and multiple N-648 medical disability exception requests, USCIS subjects qualified applicants who have a diagnosed neurocognitive impairment to excessive and potentially confusing questioning under oath.

17.     After questioning applicants extensively, interviewing officers who remain skeptical of an applicant's medical impairment are prone to taking any purported contradictions between the applicant's testimony and the documents in the record and finding contradictions—however minor or insignificant they may be—that they can use to claim that the applicant provided a false testimony in order to obtain an immigration benefit.

18.     In this way, Defendants' interviewing officers very often refuse to follow USCIS's own policy by failing to "generally accept" the medical professional's diagnosis, approaching the neurocognitively impaired applicants N-648 disability exception requests with baked-in skepticism, and by failing to provide an applicant the opportunity to address the specific issues in the naturalization interview if they determine there is credible doubt.

19.     Even where the N-648 disability exception request is ultimately approved, as in this case, Defendants' inconsistent and arbitrary treatment of impaired individuals with N-648 disability exception requests, along with skepticism-driven extensive questioning under oath that can "muddy the waters", creates a situation of confusion where USCIS can manufacture a reason to determine that an applicant provided false testimony under oath.

20.    This approach amounts to a pattern and practice of disability discrimination against neurocognitively impaired lawful permanent residents applying for citizenship.

21.    Consequently, disabled lawful permanent residents are denied political rights, such as the right to vote, denied eligibility for critical government benefits, and denied a sense of belonging in their adopted homeland. Such approaches and systemic delays are not experienced by non-disabled lawful permanent residents applying for naturalization.

## FACTUAL ALLEGATIONS

22.    Plaintiff is a lawful permanent resident of the United States and has lived in Texas since 1993. In 2021, she applied for naturalization, submitting Form N-400 along with a disability exception request, Form N-648, prepared by her Licensed Clinical Psychologist. The form documented a neurocognitive impairment that prevents her from effectively learning or recalling the information required to complete the English and Civics portions of the naturalization exam.

23.    On October 4, 2022, Plaintiff appeared for her initial naturalization interview. Before the interview took place, USCIS issued a formal Notice of Continuance dated July 14, 2022, indicating that the N-648 disability exception request she had submitted was found to be insufficient by the interviewing officer. Specifically, USCIS raised concerns about whether the form had been completed by a regularly treating physician, noted perceived inconsistencies between Plaintiff's testimony and statements in the form, and flagged the psychologist's language as potentially formulaic or overused.

24.     This notice postponed adjudication of the application and signaled that Plaintiff would be given an opportunity to submit a revised N-648. The issuance of the continuance reflects USCIS's initial skepticism toward the medical documentation, setting the tone for a prolonged and inconsistent review process that ultimately resulted in a denial of her naturalization application.

25.     Plaintiff returned for a second interview on December 6, 2022, armed with a revised N-648 completed by the same psychologist. Despite her efforts, USCIS rejected the form again, this time citing supposed contradictions between Plaintiff's medical records and the psychologist's assessment, as well as her prior success in passing a driving test in 2019. Based on these perceived inconsistencies, USCIS determined she had given false testimony under oath and denied the application on the basis that she lacked the requisite "good moral character."

26.     In response, Plaintiff filed Form N-336 on June 20, 2023, seeking a hearing to challenge the denial. She appeared for the hearing on July 29, 2024, and during that proceeding, USCIS approved her third disability exception request. However, the agency maintained its position and again denied her naturalization application in a written decision dated March 17, 2025, citing the same allegation of false testimony — despite now accepting the legitimacy of her disability and exempting her from testing.

27.     Throughout this process, Plaintiff consistently submitted completed and compliant N-648 forms, each substantiating her impairment and its impact on her ability to meet the statutory testing requirements. Yet, USCIS's fluctuating

decisions created a procedural maze, casting doubt on the very documentation they eventually accepted. At no stage did USCIS offer Plaintiff a meaningful opportunity to respond to the allegation of false testimony before issuing its final denial.

28.    As someone with a neurocognitive disability, Plaintiff's ability to provide exact dates, recall educational history, or reconcile seemingly conflicting facts under oath was understandably impaired.

29.    What USCIS construed as "false testimony" instead reflects the challenges of navigating legal interviews with diminished cognitive capacity. By failing to account for these limitations — and by allowing skepticism to override established medical documentation — USCIS applied its standards inconsistently and denied Phan the clarity, fairness, and accommodation required by law.

30.    Plaintiff has exhausted her remedies.

### FIRST CLAIM FOR RELIEF
**Violation of the Administrative Procedure Act**
**Agency Action that is Arbitrary, Capricious, and an Abuse of Discretion**
*5 U.S.C. §§ 702, 706(2)(A)*

31.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

32.    Defendants DHS and USCIS are agencies within the meaning of the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

33.    Under 5 U.S.C. § 706(2)(A), this Court is empowered to set aside agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

34.    Plaintiff has suffered legal harm as a direct result of Defendants' actions and omissions, as described herein.

35.    Defendants violated the APA by systematically failing to comply with governing statutes, regulations, and internal policies regarding disability exemption requests submitted via Form N-648.

36.    Specifically, USCIS failed to "generally accept" valid medical certifications, deviated from uniform procedures, and arbitrarily rejected Plaintiff's exemption requests, despite eventual approval of one such request.

37.    The agency's inconsistent and skepticism-driven approach created undue confusion and resulted in a flawed adjudication process, especially harmful to applicants like Plaintiff with neurocognitive impairments.

38.    This failure deprived Plaintiff of a fair opportunity to respond to the allegation of false testimony, which arose unexpectedly after years of compliance and procedural engagement.

39.    As a result, Plaintiff has been unlawfully denied the ability to naturalize in violation of the APA.

**SECOND CLAIM FOR RELIEF**
**Violation of the Immigration and Nationality Act**
**and Implementing Regulations**
**8 U.S.C. § 1423(b)(1); 8 C.F.R. §§ 312.1, 312.2**

40.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

41.    The Immigration and Nationality Act, including 8 U.S.C. § 1423(b)(1), and corresponding regulations authorize disability exemptions from naturalization testing for individuals with qualifying impairments.

42.    USCIS failed to administer a fair and consistent process for evaluating Plaintiff's N-648 submissions, resulting in violations of the INA, its implementing regulations, and the agency's own policy memoranda.

43.    USCIS disregarded its policy to "generally accept" the medical professional's diagnosis and failed to provide Plaintiff a meaningful opportunity to address alleged discrepancies prior to denial.

44.    As a result, Plaintiff was wrongly denied her statutory entitlement to disability accommodations and the opportunity to naturalize.

### THIRD CLAIM FOR RELIEF
### Violation of the Fifth Amendment – Procedural Due Process

45.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

46.    The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law.

47.    Lawful permanent residents who satisfy the criteria for naturalization have a protected liberty interest in pursuing citizenship.

48.    USCIS denied Plaintiff's naturalization application based on an unexpected allegation of false testimony without affording her a reasonable opportunity to confront or rebut the accusation.

49.    Absent procedural safeguards, such a finding permanently bars Plaintiff from naturalizing.

50.    The agency's use of vague standards such as "credible doubt," and its failure to provide a hearing tailored to Plaintiff's neurocognitive impairments, denied her a meaningful opportunity to be heard.

51.    Defendants' conduct thus violated Plaintiff's procedural due process rights and resulted in an unlawful deprivation of her ability to naturalize.

## FOURTH CLAIM FOR RELIEF
**Violation of the Fifth Amendment – Substantive Due Process**

52.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

53.    The Due Process Clause also protects against government conduct that is arbitrary or conscience-shocking in its substantive application.

54.    Plaintiff, as a lawful permanent resident who meets the statutory criteria for naturalization, holds a protected liberty interest in completing the process lawfully.

55.    Defendants maintained a pattern and practice of arbitrarily denying disability exemption requests without applying consistent standards or procedures.

56.    USCIS's treatment of Plaintiff — including extensive questioning and disregard for neurocognitive limitations — foreseeably led to alleged inconsistencies that were mischaracterized as false testimony.

57.     USCIS failed to honor its own policies requiring that applicants be given a fair opportunity to address perceived contradictions, especially those arising from a recognized impairment.

58.     The result is a permanent bar to citizenship based on a contested and unexamined finding of false testimony.

59.     Defendants' actions violated Plaintiff's substantive due process rights and deprived her of lawful access to naturalization.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this matter pursuant to 8 U.S.C. §1421(c), 5 U.S.C. §702, and 28 U.S.C. §1331;

2. Declare unlawful and set aside USCIS's March 17, 2025 decision denying Plaintiff's naturalization application based on an unsupported allegation of false testimony;

3. Vacate the finding that Plaintiff gave false testimony under oath, and remand with instructions that USCIS conduct a new naturalization interview without requiring English and Civics testing, pursuant to the approved N-648 disability exception;

4. Enter injunctive relief requiring USCIS to follow its internal policies and federal law when adjudicating disability exemption requests and naturalization applications for similarly situated individuals;

5.  Award reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412(d), and any other applicable authority;

6.  Grant any further relief this Court deems just, equitable, and proper under the circumstances.

Respectfully submitted,

<u>On behalf of</u>:
Lan Thi Phan

_____
Timothy A. Gambacorta
Counsel for the Plaintiff

Dated: July 11, 2025

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON, TEXAS

| | |
|---|---|
| **LAN THI PHAN**, | A-File No. 073-268-924 |
| Plaintiff, | |
| vs. | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; KRISTI NOEM**, Secretary of Homeland Security; **ANGELICA ALFONSO-ROYALS**, Acting Director, U.S. Citizenship and Immigration Services; **CAROLYN KEMOKAI**, Field Office Director, Houston Field Office, U.S. Citizenship and Immigration Services, | Case No.: 4:25-cv-03243 |
| | Agency No.: IOE0921070882 (N-336) |
| | Agency No.: IOE0912078805 (N-400) |
| in their official capacities, | **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT** |
| Defendants. | |

# EXHIBIT 1



U.S. Citizenship
and Immigration
Services

MENU

Home > Policy Manual > Volume 12 - Citizenship and Naturalization > Part E - English and Civics Testing and Exceptions >
Chapter 3 - Medical Disability Exception (Form N-648)

# Chapter 3 - Medical Disability Exception (Form N-648)

**Guidance**

Resources (10)

Appendices (1)

Updates (11)

## A. Medical Disability Exception Background

In 1994, Congress enacted legislation providing an exception to the English and civics requirements for naturalization applicants who cannot meet the requirements[1] because of a physical or developmental disability or mental impairment.[2]

The English and civics requirements do not apply to naturalization applicants who are unable to comply due to a "medically determinable" physical or developmental disability or mental impairment that has lasted, or is expected to last, at least 12 months. The regulations define medically determinable as an impairment that results from abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques.[3]

The applicant must demonstrate that the applicant has a disability or impairment that affects functioning such that the applicant is unable to meet the English and civics requirements for naturalization, even with reasonable accommodations.[4]

A licensed medical professional[5] must complete a Medical Certification for Disability Exceptions (Form N-648) and certify, under penalty of perjury, that the applicant's physical or developmental disability or mental impairment prevents the applicant from meeting the English requirement, the civics requirement, or both requirements.

## B. Filing

### 1. Form N-648 Submission

An applicant seeking an exception to the English or civics requirements or both should submit a Form N-648 as an attachment to the Application for Naturalization (Form N-400).[6] However, USCIS should accept a Form N-648 submitted after the applicant files the naturalization application. Applicants should use the form edition of the Form N-648 listed on the form webpage.

### 2. Multiple Submissions

If the applicant submits more than one Form N-648 during the initial interview, during the re-examination, or anytime during the pendency of the same naturalization application, an officer may examine any significant discrepancies between the documents. However, the officer must provide the applicant with an opportunity to explain discrepancies.

## C. Distinction Between Medical Disability Exception and Accommodation

Requesting an exception to the English or civics requirements or both is different from requesting an accommodation for the naturalization test or interview.[7] An accommodation simply modifies the manner in which an applicant meets the educational requirements; it does not exempt the applicant from the English or civics requirements. Form N-648 is not used to request an accommodation.

Reasonable accommodations may include, but are not limited to, sign language interpreters, extended time for completing the English and civics requirements, and completing the English and civics requirements and naturalization interview at an off-site location. A disability exception, which can only be requested by submitting Form N-648, requires an applicant to show that the applicant's physical or developmental disability or mental impairment prevents the applicant from complying with the English or civics requirements or both, even with reasonable accommodations. The impact of a particular physical or developmental disability or mental impairment may vary between applicants.

It may be possible for USCIS to accommodate one applicant who is affected by a particular physical or developmental disability or mental impairment, while another applicant affected by the same disability or impairment may be eligible for a disability exception.[8] For example, an applicant who has a traumatic brain injury may require the accommodation of more time to complete the writing portion of the English test, while an applicant with the same diagnosis may not be able to write a simple sentence in English even with an accommodation, and needs to submit a Form N-648.

An applicant may request both a medical disability exception and a reasonable accommodation where both are needed. For example, if an applicant is deaf and uses a sign language interpreter and is also unable to meet the English and civics requirements due to a physical or developmental disability or mental impairment, the applicant may submit a Form N-648 and also request that USCIS provide a sign language interpreter for the naturalization

Need Help?
Chat with Emma™

## D. Authorized Medical Professionals

USCIS only authorizes the following licensed medical professionals to certify the disability exception form:

- Medical doctors;

- Doctors of osteopathy; and

- Clinical psychologists.[10]

These medical professionals must be licensed to practice in any state of the United States, the District of Columbia, Puerto Rico, Guam, the Virgin Islands of the United States, or the Commonwealth of the Northern Mariana Islands.

# E. Scope of Medical Examination

In order for USCIS to consider deeming a Form N-648 sufficient, the medical professional must, at a minimum:

- Conduct an examination of the applicant;

- Identify and describe each physical or developmental disability or mental impairment on Form N-648;

- Explain how each physical or developmental disability or mental impairment prevents the applicant from learning or demonstrating knowledge of English, civics or both;

- Attest that the physical or developmental disability or mental impairment has lasted or is expected to last at least 12 months; and

- Attest that the cause of the physical or developmental disability or mental impairment is not related to the illegal use of drugs.

The medical professional should complete the Form N-648 using common terminology that a person without medical training can understand. While staff associated with the medical professional may assist in completing the form, the medical professional alone is responsible for providing the necessary information, answering the questions, and verifying and attesting to the accuracy of the form's content. If information is missing from the Form N-648, the officer should review any extra documents provided by the medical professional to determine if the information completes the Form N-648.

*Telehealth Examination*

USCIS may accept a Form N-648 certified by an authorized medical professional who completed the applicant's medical examination through a telehealth examination.[11] The medical professional must be licensed. In conducting telehealth examinations, medical professionals must adhere to the respective state telehealth laws and requirements, otherwise USCIS may request a new Form N-648. After a telehealth examination, the applicant should ensure all signatures are present and then submit the Form N-648 to USCIS.

# F. Review of Medical Certification

## 1. General Guidelines for Review

The officer must review the form for sufficiency[12] to determine whether the applicant is eligible for the exception. The tables below provide general guidelines on what steps the officer should and should not take when reviewing the Form N-648.

| When reviewing the form, the officer should: |
|---|
| - Determine whether the form has been completed, certified, and signed by all appropriate parties.[13] |
| - Ensure that the Form N-648 relates to the applicant and that there are no significant discrepancies between the form and information contained in the applicant's A-file or record. |
| - Determine whether the Form N-648 contains enough information to establish that the applicant is eligible for the exception by a preponderance of the evidence. This determination includes ensuring that the medical professional's explanation is both sufficiently detailed as well as specific to the applicant and to the applicant's stated physical or developmental disability or mental impairment. |

| When reviewing the form, the officer should not: |
|---|
| - Attempt to determine the validity of the medical diagnosis or second guess why this diagnosis precludes the applicant from complying with the English requirement, civics requirement, or both requirements. |

- Request to see an applicant's medical or prescription records solely to question whether there was a proper basis for the medical professional's diagnosis unless evidence exists that creates significant discrepancies that those records can help resolve. The officer may ask follow-up questions to resolve any outstanding issues.

- Require that an applicant undergo specific medical, clinical, or laboratory diagnostic techniques, tests, or methods.

- Conclude that the applicant has failed to meet the burden of proof simply because the applicant did not previously disclose the alleged medical condition in other immigration-related medical examinations or documents. It is appropriate, however, to consider this as a factor when determining the sufficiency of the Form N-648. The officer should always examine the evidence of record and ask follow-up questions to resolve any outstanding issues.

- Refer an applicant to another medical professional solely because the applicant sought care from a professional who shares the same language, culture, ethnicity, or nationality.

## 2. Connection Between Medical Disability and Educational Requirements

When reviewing the request for the medical disability exception, the officer must determine whether the medical professional explained that the applicant has a physical or developmental disability or mental impairment that prevents the applicant from being able to demonstrate that they meet the English requirement, civics requirement, or both. Illiteracy alone is not a valid reason to seek an exception to the English and civics requirements. In addition, advanced age, in and of itself, is not a medically determinable physical or developmental disability or mental impairment.

After review of the record, the officer may only grant an exception from the English or civics requirements if the applicant has demonstrated by a preponderance of the evidence that the physical or developmental disability or mental impairment results in functioning so impaired as to render the applicant unable to:

- Demonstrate an understanding of the English language, including reading, writing, and speaking words in ordinary usage in the English language;

- Demonstrate a knowledge and understanding of the fundamentals of history and of the principles and form of government of the United States; or

- Both.

## 3. Use of Interpreters

*Certification on Form N-648 and Presence of Interpreter at Medical Examination*

If it is unclear whether an interpreter was used during the medical examination, the officer will ask the applicant if the medical examination that formed the basis of the Form N-648 was performed with the assistance of an interpreter. For example, the officer may question the applicant during the interview about the manner of communication used to conduct the medical examination. Interpreters providing interpretation services for telehealth medical examinations do not have to complete the interpreter certification on Form N-648. Instead, the medical professional must complete the interpreter certification on the form.

If necessary, the officer may also choose to question the interpreter who was present at the medical examination about the interpretation provided during a medical examination in connection with the applicant's Form N-648.[14] If the officer wishes to question an interpreter, the officer must place the interpreter under oath. If the person who interpreted at the medical examination is to be questioned as a witness, and is also present during the naturalization interview to provide interpretation services, the interpreter must be disqualified from interpreting for that applicant at the naturalization interview unless a good cause exception exists.[15] Officers may not ask interpreters about the medical condition of the applicant.

If a good cause exception is not found, the officer should reschedule the interview, as needed, to permit the applicant an opportunity to find a new interpreter.

*Interpreter at Interview*

If the officer needs to ask the applicant questions about Form N-648 or explain why it is insufficient, the officer must do so in the applicant's preferred language, with the use of an interpreter,[16] and while the applicant is under oath. If the office has a language service available and the applicant agrees, the officer may use the language service when the interpreter provided by the applicant is disqualified. In the agency's discretion, as in all cases, the officer may disqualify an interpreter provided by the applicant or a telephonic language service interpreter for cause and reschedule the interview.[17]

## 4. Credible Reasons to Doubt the Validity of Form N-648

There are different reasons that USCIS may find a Form N-648 insufficient, including if USCIS determines there are credible reasons to doubt the validity of the Form N-648 due to significant discrepancies, misrepresentation, or fraud. However, in general, USCIS accepts the medical professional's diagnosis.

The officer must provide the applicant an opportunity to address any specific discrepancies or inconsistencies during the interview. When issuing a Request for Evidence (RFE), the officer should only request the information necessary to make a determination on the sufficiency of the Form N-648. In some cases, USCIS may require the submission of an additional Form N-648 or request the applicant's medical reports or other supplementary medical background information if there is a question as to whether the medical professional actually examined the applicant or there are credible reasons to doubt the validity of the Form N-648 because it is clearly contradicted by other evidence.

Below are some examples of credible reasons to doubt the validity of the form certification to assist officers in determining the sufficiency of Form N-648:[18]

- During the interview, the officer determines that the applicant was not examined by the certifying medical professional, someone other than the authorized medical professional certified the form, or the applicant paid for the Form N-648 without having an examination and diagnosis by an authorized medical professional;

- The medical professional who completed the Form N-648 is under investigation for immigration fraud, Medicaid fraud, or other fraud schemes identified by USCIS Fraud Detection and National Security (FDNS) Directorate, Immigration and Customs Enforcement, or another federal, state, or local agency, or a state medical board;

- The interpreter used during the medical examination, the naturalization interview, or both, is known or suspected, by FDNS or another state or federal agency, to be involved in any immigration fraud, including and especially Form N-648 related fraud;

- The evidence in the record or other credible information available to the officer indicates fraud or misrepresentation;

- The applicant provides multiple Forms N-648 with different diagnoses and information; or

- Any other articulable grounds that are supported by the record.

If any one or more of these indicators are present, the officer should consult with a supervisor for next steps, which may include requesting additional documentation or finding the Form N-648 insufficient.

In addition, there may be cases where USCIS suspects or determines that an applicant, interpreter, or medical professional has committed fraud in the process of seeking a medical disability exception. The officer should consult with a supervisor to determine whether to refer such a case to FDNS. If an officer or the local FDNS office determines that an applicant, interpreter, or medical professional has made material misrepresentations or committed fraud, the officer must explain those findings in a Notice of Intent to Deny or denial notice, as appropriate. Additionally, if an officer determines that an in-person or a telehealth examination did not appear to comply with state law or licensing regulations, the officer may refer the case to FDNS.

*Requesting a Supplemental Form N-648 from a Different Medical Professional*

In general, USCIS does not request a supplemental Form N-648 from a different medical professional after evaluating the originally submitted Form N-648. However, if there is a question as to whether the medical professional actually examined the applicant or there are credible reasons to doubt the validity of the medical certification because it is clearly contradicted by other evidence, the officer may request a new Form N-648 from a different medical professional. [19] The officer should exercise caution when requesting an applicant obtain a supplemental Form N-648 from another authorized medical professional. The officer should:

- Consult with a supervisor and receive supervisory approval before requesting that the applicant submit a supplemental Form N-648;

- Explain to the applicant, through an RFE, the reasons for doubting the veracity of the information on the original Form N-648, including any sworn statements, observations or applicant responses to questions during the interview that raised issues of credible doubt; and

- Provide the applicant with the relevant state medical board contact information to facilitate the applicant's ability to find another medical professional.

## G. Sufficiency of Form N-648

As previously stated, in general, USCIS should accept the medical professional's diagnosis. The Form N-648 should be completed by the certifying medical professional no more than 180 days before the applicant files the naturalization application. Once this requirement is satisfied, the Form N-648 remains valid for the entire naturalization process connected to that particular Form N-400.

An officer reviews the Form N-648 in its totality and may determine that the Form N-648 is sufficient, even if some of the questions have incomplete responses. The officer should determine that a request for a medical disability exception is sufficient if the file and testimony establish that the applicant is eligible for the medical disability exception. The file may include medical documentation and information in addition to the Form N-648.

An officer may find the Form N-648 insufficient if the form does not include the required information as detailed below.

## 1. Sufficient Form N-648

A request for a medical disability exception is sufficient if it contains the following information:

- Clinical diagnosis of the applicant's physical or developmental disability or mental impairment;[20]

- Indication as to whether the physical or developmental disability or mental impairment has lasted, or is expected to last, at least 12 months;

- Statement that the physical or developmental disability or mental impairment is not the result of the illegal use of drugs;

- Description of the clinical methods used to diagnose the physical or developmental disability or mental impairment;

- Date that the medical professional last examined the applicant for the physical or developmental disability or mental impairment;[21] and

- A sufficient explanation of how the applicant's physical or developmental disability or mental impairment prevents the applicant from meeting the English requirement, the civics requirement, or both requirements.

In addition the Form N-648 is completed, certified, and signed by all appropriate parties[22] and no significant discrepancies, or fraud indicators exist, based on the totality of evidence in the record, that call into question a finding of eligibility under a preponderance of the evidence standard.

The table below provides the general procedures for cases where an applicant qualifies for a medical disability exception. The procedures apply to any phase of the naturalization examination, including the initial examination, re-examination, or hearing on a denial.

**General Procedures Upon Determination the Form N-648 is Sufficient**

| If the officer determines an applicant's Form N-648 is sufficient at the naturalization examination or hearing and | USCIS action |
|---|---|
| • The medical professional indicated on the form that the applicant is unable to comply with the English speaking requirement. | • USCIS proceeds with the interview and civics test in the applicant's preferred language with the use of an interpreter, if applicable. |
| • The medical professional indicated on the form that the applicant is unable to comply with any or part of the English and civics requirements. | • USCIS waives the indicated requirement(s). |
| • The medical professional indicated on the form that the applicant is unable to understand or communicate an understanding of the Oath of Allegiance. | • USCIS follows the process established for legal guardians, surrogates, or designated representatives. [23] |
| USCIS then determines whether the applicant meets all other naturalization eligibility requirements. | |

## 2. Insufficient Form N-648

A request for a medical disability exception is insufficient if the Form N-648 does not contain all of the required information. [24]

The table below provides the general procedures USCIS follows when the Form N-648 is found to be insufficient. The procedures apply to any phase of the naturalization examination, including the initial examination, re-examination, or hearing on a denial. [25]

**General Procedures Upon Determination the Form N-648 is Insufficient**

| If the Form N-648 is insufficient at the naturalization examination or hearing: |
|---|
| • The officer must explain why they found the form insufficient in the applicant's preferred language, using an interpreter if needed. |
| • USCIS proceeds with the initial examination, re-examination, or hearing on a denial as if the applicant had not submitted a Form N-648. |
| • USCIS must provide the applicant with an opportunity to complete all portions of the English and civics requirements. |
| • An applicant has a total of two opportunities to pass the English and civics requirements before the application for naturalization is adjudicated: once during the initial examination and then again during a re-examination, which is scheduled if the requirements are not passed at the initial examination. |
| • An applicant may decline to attempt to complete the English and civics requirements. However, declining to continue the interview or attempt to complete the requirements counts as a failed attempt to pass the English and civics requirements. [26] |
| • An applicant's failure to appear at the re-examination or hearing on a denial, or to complete the English or civics requirements for any reason, results in a denial, unless excused by USCIS for good cause. |

If USCIS identifies deficiencies in a Form N-648, which the applicant is unable to sufficiently explain at the interview, an applicant does not have to submit a new Form N-648. USCIS will accept a previously submitted Form N-648 which contains updated or additional information. However, the resubmitted form must be re-signed and dated by the same medical professional who signed the original Form N-648. USCIS will accept a resubmitted Form N-648 under these circumstances even if a new edition of Form N-648 has been published since the Form N-648 was initially submitted, and the resubmitted form now has an expired edition date. USCIS will also accept a letter or other medical documentation addressing the Form N-648 deficiencies, if it is signed and dated by the same medical professional who signed the Form N-648.

# H. Interview, Re-Examination, and Hearing after an Insufficient Form N-648

## 1. Initial Interview

*Passing the English and Civics Requirements*[27]

If an applicant's Form N-648 is found to be insufficient, but the applicant subsequently meets the English and civics requirements in the same examination:

- The officer must provide the applicant the opportunity to proceed with the rest of the naturalization interview to determine if the applicant meets the other applicable eligibility requirements.

- The officer should not determine that the applicant engaged in fraud or lacks good moral character for the sole reason that the applicant met the educational requirements after submitting an insufficient Form N-648.

- The officer may question the applicant further, however, on the reasons for submitting the form, and any other relevant factors, if necessary.[28]

*Failing the English and Civics Requirements*

If an applicant's Form N-648 is found to be insufficient, and the applicant fails to meet the English or civics requirements:

- The officer must notify the applicant of the Form N-648 deficiencies in writing by issuing an RFE that specifically addresses the issues with the Form N-648.

- The officer should schedule the applicant to appear for a re-examination for a second opportunity to meet the English or civics requirements or both, between 60 and 90 days after the initial examination. If the applicant requests that the re-examination be rescheduled to a date that is more than 90 days after the initial examination, the applicant must agree in writing to waive the requirement under INA 336 that USCIS must adjudicate the application within 120 days from the initial interview before the applicant may apply to U.S. district court for review of a pending application for naturalization, and instead permit USCIS to adjudicate the application within 120 days from the re-examination before seeking review.[29]

## 2. Re-Examination

If new information is received in support of a Form N-648 that USCIS found insufficient at the initial interview, the officer must review the new evidence at the re-examination. In addition, the officer conducting the re-examination should review the original Form N-648 and accompanying evidence for consistency with the new information.

If an applicant submits a Form N-648 for the first time at the re-examination interview, the officer should review the form to determine if it is sufficient.[30] If the applicant has established eligibility for the disability exception, the officer should continue the naturalization interview and examination, exempting the applicant from the English or civics requirements, or both, as indicated on the Form N-648. If the medical professional indicated on the form that the applicant is unable to comply with the English speaking requirement, the applicant may use an interpreter during the interview and examination.

If an RFE related to an insufficient Form N-648 was issued at the initial interview and the interviewing officer determines that the evidence submitted in response to the RFE is insufficient:

- The officer must explain the reasons for the insufficiency in the applicant's preferred language verbally during the interview, using an interpreter, if needed. The RFE also needs to have an explanation of the insufficiency;

- The officer must proceed with the re-examination as if the applicant had not submitted a Form N-648;

- The officer must administer any portion of the English and civics tests that the applicant previously failed;

- The officer must not issue another RFE related to any insufficient Form N-648 to provide the applicant another opportunity to submit a Form N-648 or to take the English and civics tests for a third time;

- If the applicant fails any portion of the test or declines to take the test, the officer must deny the naturalization application based on the applicant's failure to meet the English or civics requirements or both; and

- In the notice to deny the application for naturalization, the officer must provide an explanation for finding the Form N-648 insufficient.

## 3. Hearing on Denial

An applicant whose naturalization application was denied may file a Request for a Hearing on a Decision in Naturalization Proceedings Under Section 336 (Form N-336) within 30 calendar days of receiving the adverse decision.[31]

USCIS may conduct a full de novo hearing on a denied naturalization application, including a full review of any previously submitted Form N-648 as well as other information contained in the record.[32] An applicant may submit additional documentation at the hearing, including a new or initial Form N-648 and relevant medical diagnostic reports, records, or statements. At the hearing, an applicant will only be allowed to submit one Form N-648 and only allowed to attempt to satisfy the educational requirements once.

In addition, the officer also should follow the same procedures in the hearing as provided in this chapter when making a determination that a Form N-648 filed for the first time at the hearing is sufficient or insufficient.

## Footnotes

[^ 1] The term "English and civics requirements" refers to demonstrating English language proficiency, which is determined by an ability to read, write, speak, and understand English, as well as knowledge of U.S. history and government, which is determined by a civics test. See Chapter 2, English and Civics Testing, Section A, Educational Requirements [12 USCIS-PM E.2(A)].

[^ 2] See INA 312(b)(1). See Section 108 of the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. 103-416 (PDF), 108 Stat. 4305, 4309 (October 25, 1994) (adding INA 312(b)).

[^ 3] See INA 312(b). See 8 CFR 312.1(b)(3) and 8 CFR 312.2(b).

[^ 4] The applicant has the burden of proof by the preponderance of the evidence standard.

[^ 5] See Section D, Authorized Medical Professionals [12 USCIS-PM E.3(D)].

[^ 6] See 8 CFR 312.2(b)(2). Applicants filing a naturalization application online should upload a scanned copy of the Medical Certification for Disability Exceptions (Form N-648) using their USCIS online account.

[^ 7] See Part C, Accommodations [12 USCIS-PM C].

[^ 8] See the Disability Accommodations for the Public webpage to request an accommodation.

[^ 9] See Part C, Accommodations, Chapter 3, Types of Accommodations [12 USCIS-PM C.3].

[^ 10] See 8 CFR 312.2(b)(2).

[^ 11] See the What is telehealth? webpage from the U.S. Department of Health and Human Services.

[^ 12] See Section G, Sufficiency of Form N-648 [12 USCIS-PM E.3(G)].

[^ 13] An officer may allow an applicant or the interpreter (if the same interpreter was present at the time of the Form N-648 examination) to sign the form at the naturalization interview if their signatures are missing; however, if a missing signature from the certifying medical professional or interpreter present at the time of the Form N-648 examination cannot be provided at the interview, an officer issues an RFE to have the medical professional or the interpreter sign the Form N-648.

[^ 14] If necessary, the officer may issue a subpoena to the interpreter for this purpose. Officers should consult with Office of the Chief Counsel before issuing a subpoena that seeks health information.

[^ 15] In the officer's discretion, a good cause exception may be granted that would allow the witness to interpret. See The Role and Use of Interpreters in Domestic Field Office Interviews, PM-602-0125.1, issued January 17, 2017. See Part B, Naturalization Examination, Chapter 3, Naturalization Interview, Section A, Roles and Responsibilities, Subsection 3, Interpreters [12 USCIS B.3(A)(3)].

[^ 16] The interpreter must be under oath. See Part B, Naturalization Examination, Chapter 3, Naturalization Interview, Section A, Roles and Responsibilities, Subsection 3, Interpreters [12 USCIS B.3(A)(3)].

[^ 17] See The Role and Use of Interpreters in Domestic Field Office Interviews, PM-602-0125.1, issued January 17, 2017, and Part B, Naturalization Examination, Chapter 3, Naturalization Interview, Section A, Roles and Responsibilities, Subsection 3, Interpreters [12 USCIS B.3(A)(3)].

[^ 18] The list provided is not exhaustive and is meant only to provide some examples for officers when reviewing Form N-648 for sufficiency. Officers should consult with a supervisor if there are any questions.

[^ 19] The officer requests this evidence by issuing an RFE, Form N-14.

[^ 20] The officer may not find the Form N-648 insufficient solely because the Diagnostic Statistical Manual or International Classification of Diseases medical codes are missing in the form if the medical professional has provided a sufficient description of the clinical diagnosis for all the physical or developmental disabilities or mental impairments.

[^ 21] If the date of last examination is missing from the Form N-648, the officer may review the date of signature of the medical professional in Part 6 and confirm with the applicant if that was the date of last examination. The officer should not determine that the form is insufficient solely because the date of last examination is missing on the form if the date can be confirmed during the naturalization interview.

[^ 22] An officer may allow an applicant or the interpreter (if the same interpreter was present at the time of the Form N-648 examination) to sign the form at the naturalization interview if their signatures are missing; however, if a missing signature from the certifying medical professional or interpreter present at the time of the Form N-648 examination cannot be provided at the interview, an officer issues an RFE to have the medical professional or the interpreter place the signature(s) on the same Form N-648.

[^ 23] See Part J, Oath of Allegiance, Chapter 3, Oath of Allegiance Modifications and Waivers, Section C, Waiver of the Oath [12 USCIS-PM J.3(C)].

[^ 24] Before determining that a Form N-648 is insufficient due to missing information, officers should review all sections to confirm that the information needed does not appear in a different section of the form.

[^ 25] See Part B, Naturalization Examination, Chapter 3, Naturalization Interview, Section D, Subsequent Re-examination [12 USCIS-PM B.3(D)]. See Part B, Naturalization Examination, Chapter 6, USCIS Hearing and Judicial Review [12 USCIS-PM B.6]. See Request for a Hearing on a Decision in Naturalization Proceedings Under Section 336 (Form N-336).

[^ 26] An officer should annotate that the applicant declined to take any part of the educational requirements in the record.

[^ 27] See INA 312.

[^ 28] The officer may question the applicant about a Form N-648 with the use of an interpreter.

[^ 29] See 8 CFR 312.5(b).

[^ 30] For more information see Section F, Review of Medical Certification, Subsection 4, Credible Reasons to Doubt the Validity of Form N-648 [12 USCIS-PM E.3(F)].

[^ 31] See Part B, Naturalization Examination, Chapter 6, USCIS Hearing and Judicial Review [12 USCIS-PM B.6].

[^ 32] See 8 CFR 336.2.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON, TEXAS

| | |
|---|---|
| **LAN THI PHAN**, <br><br> Plaintiff, <br><br> vs. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; KRISTI NOEM**, Secretary of Homeland Security; **ANGELICA ALFONSO-ROYALS**, Acting Director, U.S. Citizenship and Immigration Services; **CAROLYN KEMOKAI**, Field Office Director, Houston Field Office, U.S. Citizenship and Immigration Services, <br><br><br> in their official capacities, <br><br> Defendants. | A-File No. 073-268-924 <br><br><br><br> Case No.: 4:25-cv-03243 <br><br><br> Agency No.: IOE0921070882 (N-336) <br> Agency No.: IOE0912078805 (N-400) <br><br><br><br> **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT** |

# EXHIBIT 2

March 17, 2025

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
810 Gears Rd. Suite 100
Houston, TX 77067

 U.S. Citizenship
and Immigration
Services

TIMOTHY A. GAMBACORTA
THE GAMBACORTA LAW OFFICE, LLC
5250 OLD ORCHARD RD., STE 300
SKOKIE, IL 60077



IOE0921070882

RE: LAN THI PHAN
N-336, Request for a Hearing on a Decision in
Naturalization Proceedings (Under Section 336 of the
INA).

A073-268-924



## <u>NOTICE OF DECISION</u>

Dear Lan Thi Phan:

On June 20, 2023, you filed a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, with U.S. Citizenship and Immigration Services (USCIS). After a thorough review of record, USCIS reaffirms the decision to deny your Form N-400, Application for Naturalization for the following reason(s).

### Statement of Facts and Analysis Including Ground(s) for Reaffirming Denial

On May 17, 2023, USCIS denied your Form N-400 because USCIS found you provided false testimony under oath and provided false information in order to obtain a Form N-648, Medical Certification for Disability Exceptions.

On June 20, 2023, you filed Form N-336 and on July 29, 2024, you appeared for a hearing to review the denial of your Form N-400 filed on May 28, 2021. You stated that you have overcome the grounds of the denial.

After a complete review of the information provided on your Form N-400, the documents submitted in support of your application and request for hearing, and the testimony you provided during your naturalization interview and your N-336 review hearing, USCIS reaffirms the decision to deny your Form N-400.

Your N-400 application initially included a Form N-648, Medical Certification for Disability Exceptions signed by a Royce Nikolsky Jalazo, Doctor of Psychology, on May 11, 2021.

At your October 4, 2022 N-400 interview, USCIS found your Form N-648, signed on May 11, 2021, insufficient for several reasons, including statements by the medical professional that were inconsistent with your testimony and other evidence contained in USCIS' record. USCIS issued you a Notice of Continuance on October 4, 2022 for the insufficient Form N-648, in part.

You were therefore scheduled for a re-examination interview on December 6, 2022. You submitted a new Form N-648, Medical Certification for Disability Exceptions again signed by Dr. Royce Nikolsky Jalazo on October 10, 2022 to USCIS. You sought an exemption from both the civics and history portion of the naturalization exam as well as the English speaking and understanding portions of the naturalization test. USCIS found your Form N-648 signed on October 10, 2022 to be sufficient, including an addendum, at your interview on December 6, 2022.

However, as discussed in the N-400 denial, during the interview and review of your application with an Immigration Services Officer, you testified that the information on your Form N-400, along with any amendments made during the naturalization interview, and the documents submitted by you were true and correct. The record indicates that your testimony conflicted with the information provided in documents to USCIS, specifically the Form N-648 that you submitted. Additionally, you provided conflicting, false testimony during your interview. Because of your conflicting testimony, your application and immigration record were referred by USCIS for a subsequent investigation.

On April 24, 2023, FDNS-Oakland Park interviewed Dr. Jalazo in-person at her Florida business office address. At that time, Dr. Jalazo reviewed your Form N-648 and confirmed it was her signature on the Form N-648.

Dr. Jalazo stated that during the time frame of your N-648 (October 2022) she was not requesting any medical records to support applicants' medical claims of purported injuries. Dr. Jalazo was asked why the Form N-648 stated you had "not driven a car since 1993" when you have a valid, current Texas Driver's license. Dr. Jalazo stated her report was based on her exam and the information that you reported to her. Dr. Jalazo explained that you self-reported information to her that at twenty-four (24) years of age (around the year 1988) you had a severe head injury. Your spouse had beaten you on the "back of the head on numerous occasions" causing "vision changes/loss". Therefore, your cognitive difficulties had prevented you from having driven a car since the year 1993. Importantly, however, no severe head injury or vision changes/loss were documented or noted under the physical disability section of your immigration medical examination performed in March 1993.

In a signed sworn statement taken at your N-336 interview on July 29, 2024, the USCIS Officer asked if a Medical Examination of Applicants for United States Visa (Optional Form 157) was ever filled-out by a medical doctor on your behalf prior to your April 15, 1993 entry. You testified, "I have no idea. Husband took care of everything." However, this Medical Examination of Applicants for United States Visa (Optional Form 157) was signed by you on September 8, 1992. Importantly, the Applicant Certification stated, "I certify that I understand the purpose of the medical examination and I authorize the required tests to be completed. **The information on this form refers to me**" (emphasis added).

A medical doctor signed this Form on March 30, 1993. However, the "Remarks" section on this Form was left totally blank. There was no mention of any "traumatic brain injury" suffered by you in the year 1988--just some five (5) years prior. Also, under the General Physical Examination section, the medical doctor checked the box for "No apparent defect, disease, or disability" regarding your examination.

Subsequently, you entered the United States on April 15, 1993 as a refugee (RE7). You obtained a California Driver license in 1996, as well as again in 1998. More recently, you obtained a Texas driver's license in 2019, with no restrictions (no visual impairments noted). You took and passed the required testing including physically driving vehicles to obtain your various driver's licenses discussed above.

In signed sworn statement taken at your N-336 interview on July 29, 2024, you stated, "No sir" when the USCIS Officer asked you if you have ever driven in the United States. The USCIS Officer asked, "How did you pass the drivers' license tests in CA or TX if you had never driven in the United States?" and you replied, "I have no idea. I took a test many times."

Additionally, in the sworn statement taken on July 29, 2024, you were asked, "Have you EVER submitted fraudulent or counterfeit documentation to any U.S. Government officials to obtain or attempt to obtain any immigration benefit, including a visa or entry into the United States" (emphasis in the original)? You testified, " No sir." You were also asked, if you had "ever lied about or concealed any information on a visa petition or on any other immigration document(s) to gain entry to the United States, or apply for any immigration benefits in the United States?" You testified, "No sir."

You stated, in part, in your N-336 response that you can only "assert over and over" that you did "not provide false testimony of material facts, under oath, for the purpose of obtaining an immigration benefit." Your assertions do not overcome USCIS' N-400 denial. As discussed above, that is not what the record shows. Based on the information in the record, and your testimony during your naturalization interview, USCIS found that you gave false testimony under oath and provided false information to obtain a completed Form N-648 signed by a certifying medical professional with the intent to obtain an immigration benefit.

To be eligible for naturalization, you must demonstrate that during the statutory period, May 28, 2016 to present, you have been a person of good moral character. You have not established that you are a person of good moral character because, during the statutory period, you gave false testimony to obtain an immigration benefit. Your false testimony given on December 6, 2022 will continue to affect all applications submitted for five (5) years from that date. Therefore, you are ineligible for naturalization at this time. See INA 101(f)(6) and 316(a)(3) and Title 8, Code of Federal Regulations (8 CFR), sections 316.10 (a) and (b)(2)(vi).

For questions about your application, please visit our web site at www.uscis.gov. You can use our online tools at www.uscis.gov/tools, including our virtual assistant Emma for information and guidance. For status updates, use our Case Status Online Tool at https://egov.uscis.gov. You can reach out to the USCIS Contact Center online by visiting www.uscis.gov/contactcenter. If you are not able to find the information you need online, call the USCIS Contact Center at **1-800-375-5283**. If you are hearing impaired, please call the USCIS Contact Center TTY at **1-800-767-1833**.

Sincerely,

*Carolyn Kemokai*

Carolyn Kemokai
Field Office Director
Officer: EX1952

Timothy A. Gambacorta
AZ Bar No. 028460
IL Bar No. 6279115

The Gambacorta Law Office, Inc.
5250 Old Orchard Road, Suite 300
Skokie, Illinois 60077
Tel: 847-786-2599
Fax: 847-786-2612
Email: tim@gambacortalaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON, TEXAS

| | |
|---|---|
| **LAN THI PHAN**, <br><br> Plaintiff, <br><br> vs. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; KRISTI NOEM**, Secretary of Homeland Security; **ANGELICA ALFONSO-ROYALS**, Acting Director, U.S. Citizenship and Immigration Services; **CAROLYN KEMOKAI**, Field Office Director, Houston Field Office, U.S. Citizenship and Immigration Services, <br><br> in their official capacities, <br><br> Defendants. | A-File No. 073-268-924 <br><br><br> Case No.: 4:25-cv-03243 <br><br><br> Agency No.: IOE0921070882 (N-336) <br> Agency No.: IOE0912078805 (N-400) <br><br><br> **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT** |

## CERTIFICATE OF SERVICE

Timothy A. Gambacorta, an attorney, hereby certifies that in accordance with Fed. R. Civ. P. 5, LR 5.5., and the General Orders on Electronic Case Filing (ECF), the following document: "Civil Complaint for Declaratory and Injunctive Relief Under the Administrative Procedure Act" (and all supporting exhibits) was served pursuant to the district court's ECF system as to ECF filers, if any, or sent via electronic and regular mail on <u>July 11, 2025</u> to the following non-ECF filers:

Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Secretary of Homeland Security
Kristi Noem
c/o Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528

U.S. Attorney's Office
Southern District of Texas
1000 Louisiana, Ste. 2300
Houston, TX 77002
SDTX-Houston

Respectfully submitted,


On behalf of:
Lan Thi Phan


_____
Timothy A. Gambacorta
Counsel for the Plaintiff